**STATE of Missouri, Respondent,**

v.

**Irvin KOPF, Appellant.**

**No. 56866.**

Supreme Court of Missouri, Division No. 2.

June 12, 1972.

John C. Danforth, Atty. Gen., Jefferson City.

Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Herbert A. Kasten and Terry I. Adelman, St. Louis, for appellant.

HOUSER, Commissioner.

Irvin Kopf, charged with and convicted by a jury of assault with intent to kill with malice, § 559.180, RSMo 1969, V.A.M.S., under the Second Offender Act, appeals from the ensuing judgment and 35-year sentence imposed by the trial judge.

The court did not err in failing to sustain appellant's motion for judgment of acquittal or for new trial on the ground that the State failed to produce any evidence upon which a jury could base a finding of specific intent to kill. On the evening of May 23, 1970 two boys, 13 and 14 years of age, started to the home of one of them,

after spending the evening in the vicinity of Sydney and Arsenal Streets in the City of St. Louis. They had been riding a minibike in the alleys, and had just finished walking some girls through a nearby park toward their homes. Familiar with the streets, alleys, and back yards of the neighborhood, they took a short cut through the rear lot of the Grapevine Tavern, a 3-story edifice with living quarters above and porches across the back of the building. It was about 12:30 o'clock on the morning of May 24. When the two boys reached a point halfway through the back yard of the tavern a man, standing on the rear porch, second floor, hollered "Get out of my yard." Looking up, both boys saw and recognized defendant Irvin Kopf. Each had known him for a year or more and had seen him two or three times a week. Both boys were on speaking terms with him. He had called them by their names on many occasions. They could see him by the light coming from the windows. In addition, each of them recognized Kopf's voice. Both boys positively identified Kopf by sight and by his voice. Both boys saw that he had something in his hand, which looked like a gun. When Kopf said "Get out of my yard" the victim, Earl Koogler, said "We're going," and the boys started running. Both boys heard a shot fired. The shot did not take effect. A second shot was fired. It struck Earl Koogler in the upper back. He fell in the yard. The other boy, James Westrich, dragged Earl out of the yard into the yard next door, and then summoned help. Earl was hurried to the hospital. The diagnosis: gunshot wound in the spine. Two months of hospitalization, a spinal operation, and inability to walk ensued.

From the foregoing facts a jury reasonably could find that an assault was committed on Earl Koogler with intent to kill with malice. Defendant, armed with a gun, was obviously aware of the presence of a human being in his back yard, as evidenced by his command "Get out of my yard." In obedience to defendant's command the boys indicated viva voce that they were leaving and, suiting their actions to their words, commenced to run from the yard. Defendant fired a shot. After the passage of ample time within which to deliberate defendant fired a second time, striking Earl Koogler in the back, inflicting a serious and disabling wound. In determining the intent with which defendant acted the jury could take into consideration the nature of the weapon used, the manner of using it, the results of its use, and all of the related circumstances. State v. Woody, Mo.Sup., 406 S.W.2d 659 [5]. A deadly weapon was used. The law presumes malice as a concomitant of an assault with a deadly weapon, in the absence of countervailing testimony or circumstances. State v. Jackson, Mo.Sup., 477 S.W.2d 47; State v. Norris, Mo.Sup., 365 S.W.2d 501, 504 [3]; State v. Ayers, Mo.Sup., 305 S.W.2d 484, 486 [2]. Defendant did not testify and offered no countervailing evidence. There are no circumstances relieving against the presumption. There was ample evidence upon which to base a jury finding of specific intent to kill.

The court did not err in failing to instruct the jury on assault without malice. There is no evidentiary basis upon which a jury could find lack of the malice which the law presumes as a concomitant of an assault with a deadly weapon. As in State v. Jackson, supra, defendant offered no evidence to support a submission of lesser degrees of assault; there were no countervailing circumstances; under the evidence defendant was either guilty of an assault with malice or he was not guilty at all. 477 S.W.2d l. c. 53 [8].

The court did not err in failing to instruct the jury concerning the relevance of evidence of the extent and present condition of the victim's injury. At the trial the State asked the victim, "Since this happened, Earl, have you ever been able to walk?" Following a negative answer the boy was asked, "You've never been able to get around at all except in a

**10**

wheelchair, is that correct?," to which he answered "That's right." No objection was made to either of these questions and no ruling was requested with respect to either of these answers. Then the prosecutor asked the boy, "Are you ever going to be able to walk?," to which counsel for defendant objected. The court *sustained* this objection and there was no request for additional relief. Nor was any instruction requested withdrawing, limiting or affecting the jury's right to consider the evidence thus admitted without objection. There was no error. The unobjected-to evidence was admissible under the rule that for the purpose of showing the nature and character of the injuries sustained in an assault it is competent to prove the duration of the period of recovery, and the rule that for the purpose of showing that the weapon used was in fact a dangerous weapon, evidence is admissible to show the nature, character and extent of the injuries inflicted by the weapon in the assault. 6 C.J.S. Assault and Battery § 123, pp. 989, 990.

There was no error in allowing the medical records librarian from the hospital to read the medical chart of the victim, which contained the following statement: "He's a very bright little boy." This excerpt is challenged as irrelevant and a conclusion or opinion which the doctor was not specially qualified to give, and defendant urges that the jury could determine this from their own observation of the victim. Defendant made no objection to the foregoing statement at the trial, and therefore the point is not preserved for appellate review. No claim is made that the matter should be considered as a plain error and clearly the point does not rise to that magnitude.

The court made proper and sufficiently specific findings that defendant was an habitual criminal, based upon a certified copy of records from the State of Louisiana showing conviction, sentence, imprisonment and discharge of defendant from the State

Penitentiary of Louisiana on a charge of possession of narcotic drugs, an offense which if committed in Missouri would be punishable by imprisonment in the penitentiary.

No error appearing, the judgment is affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

MORGAN, P. J., and HENLEY and DONNELLY, JJ., and CONLEY, Special Judge, concur.